UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| HARWINDER SINGH (A-Number: 208-537-315), | No. 1:26-cv-00791-KES-CDB (HC) |
| Petitioner, | ORDER GRANTING PETITION FOR WRIT OF HABEAS CORPUS |
| v. | Doc. 1 |
| TONYA ANDREWS, Administrator of Golden State Annex; TODD LYONS, Acting Director of Immigration and Customs Enforcement; KRISTI NOEM, Secretary of the U.S. Department of Homeland Security; PAMELA BONDI, Attorney General of the United States, | |
| Respondents. | |

This habeas action concerns the re-detention of petitioner Harwinder Singh, a noncitizen who was detained and released on bond in 2016 but then re-detained on September 4, 2025. For the reasons explained below, the petition for writ of habeas corpus is granted.

**I.      Background**

Petitioner is an asylum-seeker from India who entered the United States without inspection on September 23, 2015 and was detained by immigration authorities soon thereafter. Doc. 1 at ¶¶ 18, 20; Doc. 8-1. He was initially processed for expedited removal, but immigration authorities issued him a notice to appear, placing him in full removal proceedings pursuant to 8 U.S.C. § 1229a, after an asylum officer found that he had a credible fear of persecution. Doc. 1-1, Ex. A; Doc. 8-2. On January 28, 2016, an immigration judge ordered petitioner

1

released on $10,000 bond pursuant to 8 U.S.C. § 1226(a).  Doc. 10-2, Singh Decl. at ¶ 3.  Hema Patel of Hema's Immigration Bond Services in Raymondville, Texas, was petitioner's obligor for the bond.  *See* Doc. 1-2; Doc. 10-2, Singh Decl. at ¶ 4.

An immigration judge may release a noncitizen on bond pursuant to § 1226(a) if the noncitizen is able to "establish to the satisfaction of the Immigration Judge . . . that he or she does not present a danger to persons or property, is not a threat to the national security, and does not pose a risk of flight." *In re Guerra*, 24 I. & N. Dec. 37, 38 (BIA 2006).  Such release therefore reflects a determination by a neutral arbiter that the noncitizen is not a danger to the community or a flight risk.

For nearly ten years after that, petitioner lived at liberty in the United States while pursuing relief in his removal proceedings.  Doc. 1 at ¶ 21.  He worked as a commercial truck driver during that time.  *Id.* ¶ 22.  Petitioner hired an attorney and filed an application for asylum.  Doc. 10-2 at ¶ 6.  Petitioner's attorney failed to inform him that he had a court hearing scheduled for August 22, 2016, and petitioner was ordered removed in absentia.  *Id.* ¶ 7.  Petitioner's attorney thereafter filed a motion to reopen the removal proceedings, which the immigration judge granted.  *Id.* ¶ 8.  Petitioner asserts, and respondents do not dispute, that petitioner thereafter appeared for his hearings in immigration court.  *Id.* ¶ 9; *see* Doc. 8.  Nor do respondents dispute that petitioner maintained a clean criminal record.  *See* Doc. 1 at ¶ 22; Doc. 8-6 at 3.

On October 1, 2020, U.S. Immigration and Customs Enforcement ("ICE") sent Patel, the bond obliger, a notice terminating petitioner's bond, after Patel was convicted in 2019 in a federal criminal case.  Doc. 8-4.  In that unrelated case, Patel was required to forfeit funds on deposit in various bank accounts.  *See* Doc. 160, *United States v. Hema Patel*, 2:16-cr-00584-DRH-AYS (E.D.N.Y. Oct. 1, 2019).  ICE's notice to Patel stated: "Pursuant to the Partial Final Order of Forfeiture . . ., U.S. Immigration and Customs Enforcement hereby terminates the immigration bond" for petitioner Harwinder Singh "as the cash deposit securing that bond has been forfeited and vested in the United States of America."  Doc. 8-4.  Respondents do not allege that ICE notified petitioner that they had terminated the bond.

Petitioner asserts, and respondents do not meaningfully dispute, that petitioner received

2

notice of the bond's termination only when respondents filed their opposition in this case. Doc. 10-2, Singh Decl. at ¶¶ 5, 11–12.  Petitioner continued to appear for his immigration proceedings after October 1, 2020.  Doc. 10-2 at ¶¶ 9–10.  Petitioner states that "[a]t no point during my immigration court proceedings did any Immigration Judge, DHS attorney, or my own attorneys inform me that my bond had been cancelled."  *Id.* ¶ 11.  Petitioner was ordered removed by an immigration judge on September 9, 2022.  Doc. 8-5.  Petitioner appealed the decision to the Board of Immigration Appeals, where it remains pending.  Doc. 10-2, Singh Decl. at ¶ 31.

On September 4, 2025, another vehicle struck petitioner's truck while he was driving. Doc. 1 at ¶ 4.  Petitioner indicates that, when the police arrived, they questioned him about his immigration status and then contacted ICE.  *Id.* ¶ 5.  When ICE arrived, they arrested petitioner; he has been detained since September 4, 2025.  *Id.* ¶¶ 5–6.  Petitioner is currently detained at California City Detention Center.  *Id.* ¶ 6.

## II.    Procedural History

On January 30, 2026, petitioner filed a petition for writ of habeas corpus, Doc. 1, and a motion for temporary restraining order, Doc. 2, arguing that his re-detention without a pre-deprivation bond hearing violated the Due Process Clause.  The Court issued a briefing schedule and informed the parties that it intended to rule directly on the petition.  Doc. 6.  Respondents filed an opposition , and petitioner filed a reply.  Docs. 8, 10.

## III.    Discussion

The Constitution guarantees the availability of the writ of habeas corpus "to every individual detained within the United States."  *Hamdi v. Rumsfeld*, 542 U.S. 507, 525 (2004) (citing U.S. Const., Art I, § 9, cl. 2).  "The essence of habeas corpus is an attack by a person in custody upon the legality of that custody, and . . . the traditional function of the writ is to secure release from illegal custody."  *Preiser v. Rodriguez*, 411 U.S. 475, 484 (1973).  A writ of habeas corpus may be granted to a petitioner who demonstrates that he is in custody in violation of the Constitution or federal law.  28 U.S.C. § 2241(c)(3).  Historically, "the writ of habeas corpus has served as a means of reviewing the legality of Executive detention, and it is in that context that its protections have been strongest."  *I.N.S. v. St. Cyr*, 533 U.S. 289, 301 (2001).  A district court's

habeas jurisdiction includes challenges to immigration detention.  *See Zadvydas v. Davis*, 533 U.S. 678, 687 (2001).

Petitioner argues that the Due Process Clause bars the government from re-detaining him without first providing a hearing at which it must prove he is a flight risk or danger.  Doc. 1 at ¶¶ 47–50; Doc. 2 at 7–9.  Respondents argue that *Department of Homeland Security v. Thuraissigiam*, 591 U.S. 103 (2020), forecloses petitioner's due process claim.  Doc. 8 at 4–7.

Respondents' argument is unpersuasive.  *Thuraissigiam* considered whether a noncitizen stopped at the border had a due process right to challenge his *admissibility* into the United States; it did not address a due process challenge to re-detention following a lengthy period of release in the United States.  *See Thuraissigiam*, 591 U.S. at 107.  The Supreme Court considered in *Thuraissigiam* whether a non-citizen detained just inside the border, and continuously detained thereafter, had a due process right to obtain habeas review of his asylum claim.  *Id.* at 106–07, 118–19 (noting that "respondent fail[ed] to seek release" or dispute the validity of his confinement).  It was in that context that the Court found that the non-citizen in *Thuraissigiam* had "only those rights *regarding admission* that Congress has provided by statute."  *Id.* at 140 (emphasis added); *see also Padilla v. ICE*, 704 F. Supp. 3d 1163, 1171–72 (W.D. Wash. 2023) (finding *Thuraissigiam* inapplicable to the question of whether plaintiffs were entitled to bond hearings as *Thuraissigiam*'s holding was limited to "rights regarding admission").  Petitioner does not challenge any admissibility determination in this habeas proceeding, and *Thuraissigiam* does not foreclose his due process claim regarding his detention.

Petitioner's due process claim is analyzed "in two steps: the first asks whether there exists a protected liberty interest under the Due Process Clause, and the second examines the procedures necessary to ensure any deprivation of that protected liberty interest accords with the Constitution."  *Garcia v. Andrews*, No. 2:25-cv-01884-TLN-SCR, 2025 WL 1927596, at *2 (E.D. Cal. July 14, 2025) (citing *Kentucky Dep't of Corrections v. Thompson*, 490 U.S. 454, 460 (1989)).

///

///

4

**1.  Petitioner Possesses a Protected Liberty Interest.**

A protected liberty interest may arise from a conditional release from physical restraint. *Young v. Harper*, 520 U.S. 143, 147–49 (1997).  Even when a statute allows the government to arrest and detain an individual, a protected liberty interest under the Due Process Clause may entitle the individual to procedural protections not found in the statute.  *See id.* (finding due process requires a hearing before revocation of preparole); *Gagnon v. Scarpelli*, 411 U.S. 778, 782 (1973) (same, in probation context); *Morrissey v. Brewer*, 408 U.S. 471, 482 (1972) (same, in parole context).  To determine whether a specific conditional release rises to the level of a protected liberty interest, "[c]ourts have resolved the issue by comparing the specific conditional release in the case before them with the liberty interest in parole as characterized by *Morrissey*." *Gonzalez-Fuentes v. Molina*, 607 F.3d 864, 887 (1st Cir. 2010) (internal quotation marks and citation omitted).

In *Morrissey*, the Supreme Court noted that parole "enables [the parolee] to do a wide range of things open to persons" who have never been in custody or convicted of any crime, including to live at home, work, and "be with family and friends and to form the other enduring attachments of normal life." *Morrissey*, 408 U.S. at 482.  "Though the [government] properly subjects [the parolee] to many restrictions not applicable to other citizens," such as monitoring and seeking authorization to work and travel, his "condition is very different from that of confinement in a prison." *Id.*  "The parolee has relied on at least an implicit promise that parole will be revoked only if he fails to live up to the parole conditions." *Id.*  The revocation of parole undoubtedly "inflicts a grievous loss on the parolee." *Id.* (quotations omitted).  Therefore, a parolee possesses a protected interest in his "continued liberty." *Id.* at 481–84.

Here, in 2015, an immigration judge ordered petitioner released on bond pursuant to 8 U.S.C. § 1226(a), finding that petitioner was not a flight risk or danger to the community.  Then, for the next ten years, petitioner lived and worked in the United States.  He sought relief in his removal proceedings and, with one exception due to his attorney, appeared for all hearings in immigration court.

Respondents argue that petitioner cannot have a protected interest because he is subject to

8 U.S.C. § 1225(b)(1), which mandates his detention. *See* Doc. 8 at 9. But respondents' records demonstrate that petitioner is subject to 8 U.S.C. § 1226(a), not 8 U.S.C. § 1225(b)(1). *See* Doc. 8-3. The immigration judge's bond order states that petitioner was being released on bond "pursuant to 8 C.F.R. Part 1236," the regulations which implement 8 U.S.C. § 1226. *See id.*; 8 C.F.R. § 1236.1(d)(1). Under 8 U.S.C. § 1226(a), petitioner is entitled to a bond hearing, and his detention would be authorized only if he was found to be "a threat to national security, a danger to the community at large, likely to abscond, or otherwise a poor bail risk." *In re Guerra*, 24 I. & N. Dec. 37, 40 (BIA 2006). Petitioner's prior release pursuant to section 1226(a) reflects a finding that petitioner did not present a danger or flight risk, and it provided him with a reasonable expectation that he could remain at liberty pending his removal proceedings, barring the government showing that his circumstances had materially changed.

Respondents argue that petitioner was released based on the Board of Immigration Appeals' decision in *Matter of X–K–*, 23 I. & N. Dec. 731 (BIA 2005), which held that noncitizens who are initially processed for expedited removal, but who then establish a credible fear of persecution and are subsequently transferred to full removal proceedings, are eligible for bond under § 1226(a). Doc. 8 at 4–5. Respondents argue that this was an incorrect interpretation of the law that was overturned several years later in *Matter of M-S-*, 27 I. & N. Dec. 509 (A.G. 2019). *Id.*

Respondents' argument that § 1226(a) does not apply, based on *Matter of M-S-*, is unpersuasive. In a similar case in which a noncitizen was initially processed for expedited removal but then established a credible fear of persecution and was released on bond, the court rejected respondents' argument:

> Setting aside whether *Matter of M-S-* applies retroactively or whether it is a correct interpretation of the statute, it does not support the conclusion that the government can unilaterally re-detain an individual released on bond years later with no individualized hearing or demonstrated change in circumstances. . . . [I]f *Matter of M-S-* truly operated to nullify [the petitioner's] release on bond, then he is no different than a non-citizen who is encountered within the interior of the United States after entering without inspection. And an individual like that would be considered detained under these circumstances pursuant to 8 U.S.C. § 1226(a). *Cf. Ivonin v. Rhoney*, No. 6:25-CV-06673 EAW, 2026 WL 199283, (W.D.N.Y. Jan. 26,

> 2026) (where noncitizen encountered at the border was paroled into United States, and parole expired, subsequent detention was pursuant to § 1226, not § 1225).

> Under no reasonable construction of the facts could [the petitioner's] arrest in August 2025 be viewed as a continuation of his initial border encounter. Put simply, the suggestion that ICE can incarcerate an individual like [the petitioner] who has been living in this country for 10 years with no due process or individualized hearing, should send chills through citizens and noncitizens alike. This Court cannot accept that the laws of this country would support such tactics.

*Ahmed v. Rhoney*, No. 6:25-CV-06662-EAW, 2026 WL 262553, at *2 (W.D.N.Y. Feb. 2, 2026). The Court finds the reasoning of the *Ahmed* court persuasive and similarly rejects respondents' argument.

The Court finds that petitioner has a protected liberty interest in his release.  *See Guillermo M. R. v. Kaiser*, No. 25-CV-05436-RFL, 2025 WL 1983677, at *4 (N.D. Cal. July 17, 2025) (recognizing that "the liberty interest that arises upon release [from immigration detention] is *inherent* in the Due Process Clause"); *Ortega v. Kaiser*, No. 25-cv-05259-JST, 2025 WL 1771438, at *3 (N.D. Cal. June 26, 2025) (collecting cases finding that noncitizens who have been released have a strong liberty interest).  The Court must therefore determine what process is due before the government may terminate his liberty.

### 2.  *Mathews* Factors

Due process "is a flexible concept that varies with the particular situation." *Zinermon v. Burch*, 494 U.S. 113, 127 (1990).  The procedural protections required in a given situation may be evaluated using the *Mathews v. Eldridge* factors:

> First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.

*Id.* (quoting *Mathews v. Eldridge*, 424 U.S. 319, 335 (1976)); *see Hernandez v. Sessions*, 872 F.3d 976, 993 (9th Cir. 2017) (applying *Mathews* factors in immigration detention context).

Turning to the first factor, petitioner has a significant private interest in remaining free from detention. "Freedom from imprisonment—from government custody, detention, or other

7

forms of physical restraint—lies at the heart of the liberty that [the Due Process] Clause protects." *Zadvydas v. Davis*, 533 U.S. 678, 690 (2001). Petitioner had been out of custody for nearly ten years in reliance on the government's previous representations that he was being released pending his removal proceedings. His detention denies him that liberty.

Second, "the risk of an erroneous deprivation [of liberty] is high" when, as here, "[the petitioner] has not received any bond or custody redetermination hearing." *A.E. v. Andrews*, No. 1:25-cv-00107-KES-SKO, 2025 WL 1424382, at *5 (E.D. Cal. May 16, 2025). Civil immigration detention, which is "nonpunitive in purpose and effect[,]" is justified when a noncitizen presents a risk of flight or danger to the community. *See Zadvydas*, 533 U.S. at 690; *Padilla*, 704 F. Supp. 3d at 1172. As there have been no procedural safeguards to determine if petitioner's re-detention is justified, "the probable value of additional procedural safeguards, i.e., a bond hearing, is high." *A.E.*, 2025 WL 1424382, at *5.

Third, although the government has a strong interest in enforcing the immigration laws, the government's interest in detaining petitioner without a hearing is "low." *Ortega v. Bonnar*, 415 F. Supp. 3d 963, 970 (N.D. Cal. 2019); *Doe v. Becerra*, 787 F. Supp. 3d 1083, 1093–95 (E.D. Cal. 2025). In immigration court, custody hearings are routine and impose a "minimal" cost. *Doe*, 2025 WL 691664, at *6. "If the government wishes to re-arrest [petitioner] at any point, it has the power to take steps toward doing so; but its interest in doing so without a hearing is low." *Ortega*, 415 F. Supp. 3d at 970.

On balance, the *Mathews* factors show that petitioner is entitled to a bond hearing where the government must prove that he is a flight risk or danger to the community by clear and convincing evidence. *See Pablo Sequen v. Albarran*, No. 25-CV-06487-PCP, 2025 WL 2935630, at *13–14 (N.D. Cal. Oct. 15, 2025); *Duong v. Kaiser*, No. 25-CV-07598-JST, 2025 WL 2689266, at *8 (N.D. Cal. Sept. 19, 2025). "'[T]he root requirement' of the Due Process Clause" is "'that an individual be given an opportunity for a hearing *before* he is deprived of any significant protected interest.'" *Cleveland Bd. of Educ. v. Loudermill,* 470 U.S. 532, 542 (1985) (quoting *Boddie v. Connecticut,* 401 U.S. 371, 379 (1971)); *see Zinermon*, 494 U.S. at 127 ("Applying [the *Mathews*] test, the Court usually has held that the Constitution requires some

kind of a hearing *before* the State deprives a person of liberty . . . .").

Courts typically require evidence of urgent concerns or an especially strong government interest to justify a post-deprivation hearing. *See Guillermo M. R. v. Kaiser*, 791 F. Supp. 3d 1021, 1036 (N.D. Cal. 2025); *United States v. James Daniel Good Real Prop.*, 510 U.S. 43, 53, 59–61 (1993) ("We tolerate some exceptions to the general rule requiring predeprivation notice and hearing, but only in extraordinary situations where some valid governmental interest is at stake that justifies postponing the hearing until after the event[,]" such as "executive urgency." (internal quotations omitted)).

Respondents argue that petitioner is a flight risk because he failed to report after his bond was cancelled, but that argument is unpersuasive:

First, respondents fail to establish that petitioner had any notice, before this proceeding, that ICE had terminated the bond in 2019.  The government cancelled the bond by notice to the bond obliger after that individual, the bond company owner, was federally prosecuted in an unrelated case.  Respondents do not claim that ICE ever informed petitioner of this fact, even when he appeared in immigration court.  Respondents do not contest petitioner's assertion that he learned of the cancellation of the bond only when respondents filed their opposition in this case. *See* Doc. 10-2, Singh Decl. at ¶ 5.

Second, it is undisputed that the government terminated the bond due to the actions of the bond obligor, Patel, not due to any misconduct by petitioner.  Doc. 8-4.  Respondents do not allege that the bond was terminated due to any violation by petitioner.[1]

---

[1] This is further confirmed by the fact that the notice says that the bond was "terminated," not "breached."  DHS regulations provide that an immigration "bond is breached when there has been a substantial violation of the stipulated conditions."  8 C.F.R. § 103.6(e).  The Form I-352 Immigration Bond provided by respondents states: "DHS shall send notice of a breach of the bond to the obligor or co-obligor on Form I-323, Notice- Immigration Bond Breached, at the address of record."  Doc. 8-4 at 2; *see also* 8 C.F.R. § 103.6(e) (same).  The notice sent to Mr. Patel is titled "Notice- Immigration Bond Terminated[,]" and it is not a Form I-323.  *See* Doc. 8-4 at 7.  Respondents do not allege that petitioner breached the terms of his bond or that they sent a Form I-323 alleging a breach.  Additionally, when a breach occurs, "ICE may serve demand notices . . . to bond obligors . . . to cause an alien who has been released from DHS custody on an immigration bond to appear at an ICE office or an immigration court."  8 C.F.R. § 103.6(g).  Respondents also do not allege that ICE sent petitioner's bond obligor such a demand notice.

Third, the termination of the bond appears to be a post hoc reason asserted by the government only after petitioner filed this action. The Form I-213, Record of Deportable/Inadmissible Alien, that ICE prepared upon petitioner's arrest in September 2025 does not cite the cancelled bond as a purported reason for petitioner's re-detention. *See* Doc. 8-6. And the bond was cancelled in 2020, yet respondents do not allege that they ever attempted to re-detain petitioner on that basis in the ensuing five years. Indeed, when petitioner reported for a hearing in immigration court in 2022, there is no evidence that the government moved to re-detain him at that time. *See* Doc. 8-5 at 3 (noting that petitioner testified in support of his asylum application in immigration court on March 21, 2022).

The Court concludes that a pre-deprivation hearing was required to satisfy due process.

**IV.     Conclusion and Order**

Accordingly, the petition for writ of habeas corpus, Doc. 1, is GRANTED.

Respondents are ORDERED to release petitioner immediately. Respondents are ENJOINED AND RESTRAINED from re-detaining petitioner unless they demonstrate, by clear and convincing evidence at a pre-deprivation bond hearing before a neutral decisionmaker, that petitioner is a flight risk or danger to the community such that his physical custody is legally justified.

The Clerk of Court is directed to close this case and enter judgment for petitioner. The Clerk is directed to serve California City Detention Center with a copy of this Order.

IT IS SO ORDERED.

Dated:   April 8, 2026

_____
UNITED STATES DISTRICT JUDGE

10